

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Criminal Action No.: 1:17-770-MGL |
| | § | |
| ANTONIO MILLER | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS, DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE,
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

## I.     INTRODUCTION

The Government has charged Defendant in connection with the 2008 homicide of a man

in Aiken County, South Carolina.  Pending before the Court are Defendant's Motion to Dismiss

the Indictment Based upon Pre-indictment Delay as a Violation of Due Process and/or Rule 48

(Motion to Dismiss), Defendant's Motion to Suppress Evidence from an Illegal Search and Seizure

Based upon Violation of the Fourth Amendment (Motion to Suppress Evidence), and Defendant's

Motion to Suppress the Defendant's Statements (Motion to Suppress Statements).   Having

carefully considered the motions, the responses, the replies, the record, and the applicable law, it

is the judgment of the Court that Defendant's Motion to Dismiss will be denied, Defendant's

Motion to Suppress Evidence will be denied, and Defendant's Motion to Suppress Statements will

be granted in part and denied in part.

## II.    FACTUAL AND PROCEDURAL HISTORY

This case arises out of a homicide incident that occurred in Aiken County, South Carolina on September 15, 2008. *See* ECF No. 2. The factual and procedural history is extensive, and the Court need not recite it in full. Rather, the Court will recite only the facts and history relevant to the motions discussed in this Order.

### A.    Factual Background

The Court notes there is some conflicting evidence in the record, and the Court determines the following facts by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." (citation omitted)); *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) ("In the course of deciding a motion to suppress, the district court may make findings of fact.").

On the morning of September 15, 2008, Officer Franklin Ham (Officer Ham) of the Richland County Sheriff's Office (RCSO) received a dispatch call regarding a green Ford Taurus (Green Vehicle) that was a few days overdue to be returned to U-Save Auto Rental (U-Save) in Columbia, South Carolina. ECF Nos. 47-2 at 2-5, 47-9 at 3-8. The Green Vehicle had been rented by Deidre King (Ms. King), Defendant's wife. ECF No. 48 at 4. Defendant was not listed as an authorized driver on the rental agreement for the Vehicle. *See* ECF No. 55-1. Officer Ham entered the Green Vehicle into the National Crime Information Center database as a breach of trust vehicle. ECF No. 47-2 at 5.

Later in the day on September 15, 2008, the manager at U-Save, Jeffrey Day (Mr. Day), informed Officer Ham that the Global Positioning System (GPS) tracking device on the Green Vehicle indicated the Vehicle was located at 5520 North Main Street (the Residence) in Columbia,

South Carolina, which was Defendant and Ms. King's residence. ECF Nos. 47-2 at 5, 48 at 5. Mr. Day further informed Officer Ham that he had remotely disabled the Green Vehicle. ECF No. 47-2 at 5.

Officer Ham traveled to the Residence, and, as he was pulling up to the Residence, he saw a red Ford Taurus (Red Vehicle) pull into the driveway and park behind the Green Vehicle. *Id.* at 6-7. Officer Ham observed several people standing in the yard of the Residence, including Defendant, and he asked them where Defendant and Ms. King were. *Id.* at 7-8, 13. When he received no response, Officer Ham asked everyone in the yard for identification. *Id.* at 8. Defendant initially refused to answer Officer Ham, but he later identified himself as "Eric Huey" and claimed he had a South Carolina driver's license with that name. *Id.* at 8-9.

When the driver of the Red Vehicle gave his license to Officer Ham, Officer Ham determined it was suspended, and he placed that individual under arrest for driving under suspension. *Id.* at 8-10. Shortly thereafter, Officer Stephen Dauway (Officer Dauway) of RCSO arrived at the Residence and searched the Red Vehicle. ECF Nos. 47-3 at 4-6, 47-2 at 10-12. Officer Dauway found two firearms in the Red Vehicle. ECF No. 47-2 at 11-12. After searching the Red Vehicle, Officer Dauway conducted a warrantless search of the Green Vehicle and discovered a plastic bag containing crack cocaine. ECF Nos. 47-2 at 12, 47-3 at 7-8. Officer Dauway then detained several men standing on the back stoop of the Residence, including Defendant, for questioning. ECF Nos. 47-3 at 9, 48 at 6, 59 at 2.

Officer Dauway called narcotics investigator Marcus Brown (Investigator Brown) of RCSO, and Investigator Brown and Investigator Taima Jordan (Investigator Jordan) of RCSO arrived on scene at the Residence. ECF No. 47-4 at 4. Investigator Brown questioned Defendant, and Defendant expressed concern about picking his son up from the school bus stop. *Id.* at 9-10.

Investigator Brown told Defendant they needed "to go ahead and take care of this" and said they would try to call Defendant's wife to pick up his child but, if not, they would call the Department of Social Services (DSS) "to take control of the child till we get the situation taken care of." *Id.* at 10. Investigator Brown then advised Defendant of his *Miranda* rights, *id.*, and Defendant admitted one of the guns in the Red Vehicle and the cocaine found in the Green Vehicle were his, *id.* at 13.

Investigator Brown subsequently called Investigator Robert Crane (Investigator Crane) of the RCSO to prepare a search warrant for the Residence. ECF Nos. 47-4 at 16, 47-5 at 4. The Olympia Magistrate signed the search warrant, ECF No. 47-1, and Investigator Crane delivered the search warrant to the Residence, ECF No. 47-5 at 6. When Investigator Crane delivered the search warrant, Investigator Jordan executed it, ECF No. 47-6 at 3-4, and seized a number of items, including cocaine and firearms, ECF No. 47-1 at 5.

After searching the Residence, Investigator Jordan again advised Defendant of his *Miranda* rights and questioned him. ECF No. 47-6 at 8-10. Investigator Jordan informed Defendant of the drugs and guns recovered during the search of the Residence and told him he and Ms. King would both be charged if nobody claimed the items. *Id.* at 10. Defendant then stated the items were his. *Id.*

**B.     Procedural History**

Defendant was convicted by a jury in South Carolina state court in 2012 of murder and related offenses arising out of a homicide that occurred in Aiken County, South Carolina on September 15, 2008. ECF No. 44 at 1. On appeal, the South Carolina Court of Appeals affirmed the trial court's denial of Defendant's motion to suppress evidence found in the Residence, holding the affidavit supporting the search warrant for the Residence established probable cause for the warrant. *State v. Miller*, No. 2014-UP-409, 2014 WL 6488693 (S.C. Ct. App. Nov. 19, 2014).

The South Carolina Supreme Court, however, held on March 30, 2016, that the affidavit failed to establish probable cause for the warrant and reversed Defendant's convictions. *State v. Miller*, No. 2016-MO-009, 2016 WL 1244403 (S.C. Mar. 30, 2016).

On August 16, 2017, the Government filed a three-count indictment (Indictment) against Defendant arising out of the 2008 homicide in Aiken County. ECF No. 2. The Indictment charges Defendant with use of a firearm causing death, kidnapping resulting in death, and a drug conspiracy resulting in death. *Id.*

Defendant was arraigned in federal court on August 17, 2017, and entered a plea of not guilty. *See* ECF No. 12. Attorney Allen Burnside was appointed to represent Defendant on August 17, 2017, and attorney Jeffrey Bloom was appointed as co-counsel for Defendant on August 18, 2017. *See* ECF Nos. 15, 25. Also on August 18, 2018, the Government provided notice it would decline to seek the death penalty against Defendant. ECF No. 13.

The Court held a pre-trial conference on September 27, 2017, during which Defendant requested a continuance of two terms and waived his statutory speedy trial rights. *See* ECF No. 36. Defendant preserved any due process and speedy trial rights he had under the Fifth and Sixth Amendments, and the Court continued the case to its February/March term of court. *Id.* At a pre-trial conference on February 6, 2018, Defendant and the Government requested the Court enter a proposed scheduling order setting jury selection for August 7, 2018, and a jury trial to commence on August 8, 2018. *See* ECF No. 42. Defendant again waived his statutory speedy trial rights, and the Court entered the parties' proposed scheduling order. ECF No. 43.

Defendant filed his Motion to Dismiss on February 9, 2018. ECF No. 44. The Government responded, ECF No. 51, and Defendant replied, ECF No. 53. Defendant filed his Motion to Suppress Evidence on February 22, 2018, ECF No. 47, and he filed a supporting memorandum the

next day, ECF No. 48.  The Government responded to the Motion to Suppress Evidence, ECF No. 55, and Defendant replied, ECF No. 58.  On March 16, 2018, Defendant filed his Motion to Suppress Statements, ECF No. 54, to which the Government responded, ECF No. 59.

On April 5, 2018, the Court held a hearing on Defendant's Motion to Dismiss, Motion to Suppress Evidence, and Motion to Suppress Statements, at which counsel for Defendant and the Government were present.  The Government presented testimony from witnesses at the hearing, and the parties thoroughly argued their positions.  The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of Defendant's Motion to Dismiss, Motion to Suppress Evidence, and Motion to Suppress Statements.

## III.     MOTION TO DISMISS

### A.     Contentions of the Parties

Defendant argues the Indictment should be dismissed pursuant to the Due Process Clause of the Fifth Amendment as a result of the Government's nine year delay after the commission of the alleged crime in filing the Indictment.  Defendant avers the "extraordinary" pre-indictment delay in this case "violates fundamental concepts of justice."  ECF No. 44 at 14.  Defendant insists the Government's failure to violate any statute of limitations is not determinative, especially because there is no statute of limitations applicable to the charges in the Indictment.  Defendant posits the Government has no legitimate reason for the substantial pre-indictment delay.  Additionally, Defendant urges that Federal Criminal Procedure Rule 48(b) is an embodiment of the Court's inherent authority to dismiss cases and provides supplemental authority for the Court to dismiss the Indictment.

The Government opposes Defendant's Motion to Dismiss and insists it would be improper to dismiss the Indictment.

**B.      Standard of Review**

Although statutes of limitations serve as the "primary guarantee against bringing overly stale criminal charges," *United States v. Marion*, 404 U.S. 307, 322 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)), there are circumstances under which delay in bringing an indictment can violate the Due Process Clause of the Fifth Amendment despite compliance with the applicable statute of limitations. *United States v. Lovasco*, 431 U.S. 783, 789 (1977).

A court must conduct a two-pronged inquiry when determining whether pre-indictment delay in a particular case violated a defendant's right to due process. *United States v. Uribe-Rios*, 558 F.3d 347, 358 (4th Cir. 2009). First, a court must determine the threshold issue of whether the defendant proved he suffered actual and substantial prejudice as a result of the delay, which is a heavy burden. *United States v. Lopez*, 860 F.3d 201, 213 (4th Cir. 2017); *Uribe-Rios*, 558 F.3d at 358. To satisfy this prong, the defendant must show the pre-indictment delay "meaningfully impaired his ability to defend against the [prosecution's] charges to such an extent that the disposition of the criminal proceeding was likely affected." *Jones v. Angelone*, 94 F.3d 900, 907 (4th Cir. 1996) (citations omitted).

Second, if the defendant meets the threshold requirement of proving actual prejudice, the court then must consider the government's reasons for the delay, "balancing the prejudice to the defendant with the Government's justification for delay." *Uribe-Rios*, 558 F.3d at 358 (quoting *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 404 (4th Cir. 1986)). The basic inquiry in this second prong is "whether the Government's action in prosecuting after substantial delay

violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'" *Id.* (quoting *Automated Med. Labs.*, 770 F.2d at 404).

Federal Criminal Procedure Rule 48(b) provides: "The court may dismiss an indictment, information, or compliant if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial."

### C.    Discussion and Analysis

As an initial matter, the Court notes that Federal Criminal Procedure Rule 48(b) applies only to post-arrest situations. *Marion*, 404 U.S. at 319; *see also, e.g.*, *United States v. Daniels*, 698 F.2d 221, 223 (4th Cir. 1983). Therefore, the Court rejects Defendant's argument that Rule 48(b) provides supplemental authority for the Court to dismiss the Indictment based on the delay between the commission of the underlying conduct and the filing of the Indictment. Moreover, the Indictment was filed on August 16, 2017, ECF No. 2, and Defendant was arrested on August 17, 2017, *see* ECF No. 11. Thus, there is no post-arrest delay in this case warranting dismissal pursuant to Rule 48(b).

The Court will now turn to Defendant's contention that the Government's pre-indictment delay in this case constitutes a violation of his due process rights. As set forth above, in order to determine whether the pre-indictment delay violates Defendant's Fifth Amendment rights, the Court must first consider whether Defendant has demonstrated actual and substantial prejudice to his ability to defend himself at trial as a result of the delay. *See Uribe-Rios*, 558 F.3d at 358. The Court holds that he has not.

Defendant argues he has suffered prejudice in a number of ways. *See* ECF No. 44 at 14-19. Defendant claims he has been prejudiced because: the Court might not follow the South Carolina Supreme Court's decision regarding the search warrant for the Residence; he is being

deprived of a speedy trial defense he would have in state court; he is subject to a separate penalty for kidnapping under federal law but not under state law; he faces a mandatory life sentence under federal law but not under state law; and he would receive no credit for the time he has spent in state custody if sentenced by this Court. *See id.*

These assertions, however, fail to demonstrate prejudice to Defendant's ability to defend himself at trial and to have a fair trial. *See Angelone*, 94 F.3d at 907 (explaining that prejudice resulting from pre-indictment delay must meaningfully impair a defendant's ability to defend against the prosecution's charges). Rather, they amount to differences between the state and federal systems. For purposes of determining whether the pre-indictment delay violates Defendant's due process rights, it is irrelevant whether Defendant would prefer to be tried in state court. Any disadvantages Defendant believes he might have in federal court as opposed to state court are simply the result of differences between the state and federal systems; they are not the result of pre-indictment delay and do not meaningfully impair Defendant's ability to defend himself at trial. *See Marion*, 404 U.S. at 324 (holding that the Fifth Amendment requires dismissal if pre-indictment delay causes substantial prejudice to a defendant's right to a fair trial). Therefore, the Court holds Defendant's allegations of prejudice relating to differences between the federal and state court systems fail to satisfy his burden of proving substantial prejudice as a result of pre-indictment delay.

Defendant also avows the pre-indictment delay has prejudiced him by rendering him unable to defend himself effectively against the drug charge because he cannot retrace his steps over a seven-month period of time from ten years ago. Similarly, Defendant avers one witness, Angie King, has died, and other witnesses will be difficult to locate and, if located, unable to remember events.

Although these claims of prejudice relate to Defendant's ability to defend himself at trial, they are speculative and, consequently, insufficient to satisfy Defendant's burden. *See Angelone*, 94 F.3d at 907 (explaining that prejudice must be actual as opposed to speculative). Furthermore, when a defendant claims prejudice based on the unavailability of witnesses, he is required to identify the unavailable witnesses, specify the content of their expected testimony, demonstrate he has made serious efforts to locate them, and establish the information they would have offered cannot be obtained from other sources. *Id.* at 908. With the exception of simply naming Angie King, Defendant has failed to provide this information.

Accordingly, the Court holds Defendant has failed to meet the threshold requirement of proving he has suffered actual and substantial prejudice caused by the pre-indictment delay. *See Uribe-Rios*, 558 F.3d at 358. The Court will therefore deny Defendant's Motion to Dismiss.

## IV.     MOTION TO SUPPRESS EVIDENCE

### A.     Contentions of the Parties

In his Motion to Suppress Evidence, Defendant maintains the searches of the Green Vehicle and the Residence were unconstitutional and argues the evidence recovered during both searches must therefore be suppressed.

Defendant contends the evidence found in the Green Vehicle is inadmissible because the warrantless search of the Vehicle lacked probable cause, and no exception to the warrant requirement for searches applies. Defendant further asserts the warrantless use of GPS data to locate the Vehicle was unconstitutional. Defendant insists he had a reasonable expectation of privacy in the Green Vehicle and therefore is able to challenge the search of the Vehicle.

Defendant claims the evidence recovered during the search of the Residence must be suppressed for several reasons. First, Defendant urges the unconstitutional search of the Green Vehicle tainted the search of the Residence and rendered the evidence found in the Residence fruit of the poisonous tree. Second, Defendant postulates collateral estoppel and res judicata require the Court to abide by the South Carolina Supreme Court's decision that the search warrant for the Residence lacked probable cause. Third, Defendant insists the search warrant for the Residence lacked probable cause. Defendant further maintains it was objectively unreasonable for law enforcement to rely upon the search warrant, and the good faith exception for invalidated search warrants is therefore inapplicable.

The Government responds that the search of the Green Vehicle did not violate Defendant's Fourth Amendment rights because Defendant lacks standing to challenge both the search of the Vehicle and the GPS tracking of the Vehicle. Specifically, the Government contends Defendant lacks standing because the Vehicle was the subject of an ongoing breach of trust investigation, and Defendant was not an authorized driver of the Vehicle. In the alternative, the Government argues the evidence found in the Green Vehicle should be admitted pursuant to the inevitable discovery doctrine.

Regarding the search of the Residence, the Government explains collateral estoppel and res judicata do not apply to the South Carolina Supreme Court's decision regarding whether probable cause existed for the search warrant because the Government was not a party to the prior proceeding leading to that decision. Furthermore, the Government insists probable cause did exist for the search warrant. Lastly, the Government contends that, even if it were determined that the search warrant lacked probable cause, the evidence should be admitted pursuant to the good faith

exception for subsequently invalidated warrants because law enforcement reasonably relied upon the duly issued warrant.

**B.      Standard of Review**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"[T]he protections of the Fourth Amendment are activated only when the state conducts a search or seizure in an area in which there is a 'constitutionally protected reasonable expectation of privacy.'"  *United States v. Davis*, 690 F.3d 226, 241 (4th Cir. 2012) (quoting *New York v. Class*, 475 U.S. 106, 112 (1986)).  "A search or seizure for Fourth Amendment purposes does not occur, therefore, when a person lacks a reasonable expectation of privacy in the material [or place] examined."  *Id.* (citation omitted).

"[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' [under the Fourth Amendment] unless it has been authorized by a valid search warrant."  *Camara v. Mun. Court of City and Cty. of S.F.*, 387 U.S. 523, 528-29 (1967) (citations omitted).  "Search warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment."  *United States v. Wilhem*, 80 F.3d 116, 118 (4th Cir. 1996) (citation omitted).  Evidence obtained in violation of the Fourth Amendment is generally inadmissible at trial pursuant to the judicially created exclusionary rule.  *Herring v. United States*, 555 U.S. 135, 139 (2009).  The exclusionary rule, however, is meant to deter illegal searches and seizures, and it is not always applicable.  *Id.* at 139-41.

Moreover, the Fourth Amendment "protects people, not places." *United States v. Castellanos*, 716 F.3d 828, 832-33 (4th Cir. 2013) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). Thus, Fourth Amendment rights cannot be vicariously asserted, and a defendant may seek to invoke the exclusionary rule and to suppress evidence recovered during an illegal search and seizure only when his Fourth Amendment rights were violated by the search and seizure. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

### C. Discussion and Analysis

#### 1. Search of the Green Vehicle

The Court holds Defendant had no reasonable expectation of privacy in the Green Vehicle. The Vehicle was rented by Ms. King, not Defendant, and Defendant was not listed as an authorized driver on the rental agreement. Furthermore, the Vehicle was overdue to be returned to U-Save and was the subject of a breach of trust investigation. As an unauthorized driver of a breach of trust vehicle, Defendant had no legitimate ownership or possessory interest in the Vehicle and no right to exclude others from the Vehicle. *See Castellanos*, 716 F.3d at 833-34 ("When attempting to determine whether a defendant has a reasonable expectation of privacy in property that is held by another, we consider such factors as 'whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude others from the property.'" (quoting *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992)).

Because Defendant had no reasonable expectation of privacy in the Green Vehicle, his Fourth Amendment rights were not implicated by the search of the Vehicle or the use of GPS data to track the Vehicle. *See, e.g.*, *Davis*, 690 F.3d at 241. Consequently, Defendant is unable to invoke the exclusionary rule to suppress the evidence obtained during the search of the Vehicle. *See, e.g.*, *Rakas*, 439 U.S. at 133-34. The Court will therefore deny the portion of Defendant's

Motion to Suppress Evidence seeking to suppress the evidence found during the search of the Green Vehicle.

### 2. Search of the Residence

Because the Court holds the search of the Green Vehicle failed to violate Defendant's Fourth Amendment rights, the Court rejects Defendant's argument the search of the Vehicle tainted the search of the Residence and rendered the evidence recovered in the Residence fruit of the poisonous tree.

Defendant's position that collateral estoppel and res judicata require the Court to abide by the South Carolina Supreme Court's decision regarding the search warrant for the Residence is erroneous. Collateral estoppel bars re-litigation of an issue only when the party against whom collateral estoppel is being invoked had a full and fair opportunity to litigate the issue in the prior action. *Watkins v. M. & M. Tank Lines, Inc.*, 694 F.2d 309, 311 (4th Cir. 1982). Similarly, the parties in the relevant prior action must be the same as the parties in a current action for res judicata to apply. *Id.* Because the Government was not a party to the state proceedings leading to the South Carolina Supreme Court's decision at issue, collateral estoppel and res judicata are inapplicable.

The Court will now turn to the parties' contentions regarding the search warrant itself. As stated above, the parties disagree on whether the search warrant was supported by probable cause. The Government argues that, even if it were determined the search warrant for the Residence lacked probable cause, the evidence recovered during the search should be admitted pursuant to the good faith exception for invalidated warrants because the law enforcement officers reasonably relied upon the duly issued warrant.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court recognized the "good faith" exception for evidence obtained in reasonable reliance on duly issued search warrants. Under the good faith exception, evidence obtained pursuant to a subsequently invalidated search warrant is admissible unless a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. An officer's reliance on a warrant is unreasonable in the following circumstances: (1) when the magistrate who issued the warrant was misled by knowingly or recklessly false information in an affidavit; (2) when the magistrate wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when a warrant is "so facially deficient . . . the executing officers cannot reasonably presume it to be valid." *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 923). When a Defendant challenges both the existence of probable cause to support a search warrant and the applicability of the good faith exception, the reviewing court may proceed directly to the good faith issue. *Leon*, 468 U.S. at 925.

The Court will exercise its discretion to proceed immediately to the determination of whether the good faith exception applies in this case. Defendant contends the good faith exception is inapplicable because the affidavit supporting the warrant was a "bare bones" affidavit such that it was unreasonable for the officers to rely on the warrant. Defendant also claims the Magistrate acted as a "rubber stamp" in issuing the warrant and abandoned his role. Additionally, Defendant avers the affidavit contained false information and omitted material information. Specifically, Defendant notes the affidavit stated the Green Vehicle was parked in front of the Residence, but it was actually in the driveway, and Defendant asserts the affidavit omitted various material facts

about the situation, including, for example, the fact that there was no arrest for Ms. King. *See* ECF No. 58 at 6-7.

The Court disagrees with Defendant's assertion it was unreasonable for the officers to rely on the warrant because the affidavit was a "bare bones" affidavit. The affidavit articulates a number of facts, *see* ECF No. 47-1, and, regardless of whether it establishes probable cause for the warrant, it cannot accurately be characterized as "bare bones." Likewise, the Court rejects Defendant's contention the Magistrate who issued the warrant acted as a "rubber stamp" and abandoned his judicial role; there is simply no evidence of such.

The Court also rejects Defendant's argument the good faith exception is inapplicable because the affidavit contained false information and omitted material information. The fact that the affidavit stated the Green Vehicle was parked in front of the Residence when it was in fact parked in the driveway is immaterial and would not have materially changed the Magistrate's analysis. In fact, knowledge that the Vehicle was parked in the driveway of the Residence arguably would have strengthened the probable cause analysis. Similarly, the facts Defendant mentions as omitted from the affidavit, *see* ECF No. 58 at 7, would not have been material to the Magistrate's determination of whether to issue the warrant. Officers are not obligated to articulate every known piece of information in a search warrant affidavit, and failure to do so does not render the good faith exception inapplicable.

The Court has thoroughly reviewed the evidence, and the Court holds it was reasonable for the officers to rely upon the search warrant for the Residence issued by the Magistrate. There is no evidence the officers acted in bad faith, and there is nothing about the warrant itself or the circumstances surrounding its issuance that should have led the officers to doubt whether it was properly issued. Moreover, the Court notes the South Carolina Court of Appeals and the South

Carolina Supreme Court disagreed on whether probable cause supported the warrant. It would be unreasonable, and unwise, to expect the law enforcement officers to have second guessed the propriety of the warrant when two appellate courts disagreed on the issue.

Accordingly, the Court holds the good faith exception for invalidated search warrants applies, and the evidence obtained during the search of the Residence is admissible regardless of whether there was probable cause for the search warrant. The Court will therefore deny the portion of Defendant's Motion to Suppress Evidence seeking to suppress the evidence recovered during the search of the Residence.

## V.     MOTION TO SUPPRESS STATEMENTS

### A.     Contentions of the Parties

In his Motion to Suppress Statements, Defendant seeks to suppress the following seven statements he made to law enforcement on September 15, 2008:

1) Defendant's silence when Officer Ham asked who Antonio Miller was;

2) Officer Ham's testimony Defendant identified himself as "Eric Huey" and said he had a South Carolina driver's license under that name;

3) Officer Brown's testimony Defendant said "I was in Charleston," "I don't know where they were," and "I was in the green Taurus."

4) Officer Brown's testimony Defendant said the following when confronted about the gun found in the Red Vehicle: "So? I don't have anything to say."

5) Officer Brown's testimony Defendant admitted the second gun in the Red Vehicle and the cocaine in the Green Vehicle were his;

6) Officer Jordan's testimony Defendant admitted the cocaine and three firearms found in the Residence were his after the search of the Residence was executed; and

7) Officer Jordan's testimony Defendant refused to give a written statement at law enforcement headquarters.

For ease of reference, the Court will refer to these statements by the numbers listed above.

Defendant contends Statements 1-7 are inadmissible under the Fourth Amendment as fruits of his allegedly illegal seizure, which Defendant claims began when Officer Ham arrived at the Residence and asked him for identification. Defendant also argues Statements 5 and 6 are inadmissible under the Fourth Amendment because law enforcement used evidence obtained in violation of Defendant's Fourth Amendment rights to confront him and to elicit these statements.

Defendant further avers Statements 5 and 6 must be suppressed under the Fifth Amendment as the products of police threats and coercion. Specifically, Defendant asserts Statement 5 was the product of a threat to place his child into the custody of DSS, and Statement 6 was the product of a threat to arrest Ms. King if Defendant did not admit the drugs and guns found in the Residence were his. Lastly, Defendant maintains Statements 1 and 7 are inadmissible under the Fifth Amendment because a defendant's silence or refusal to give a statement cannot be used against him.

The Government responds Statements 1 and 2 are admissible because they were given during non-custodial questioning of Defendant and are therefore not "statements" for purposes of the Fourth Amendment. The Governments contends Statements 5 and 6 are admissible because they were voluntary statements given by Defendant after he had been lawfully arrested and advised of his *Miranda* rights.

### B. Standard of Review

As stated above, the Fourth Amendment protects people against "unreasonable searches and seizures." U.S. Const. amend. IV. "This guarantee, however, 'does not extend to all police-citizen encounters.'" *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015) (quoting *United States v. Jones*, 678 F.3d 293, 298-99 (4th Cir. 2012)). An encounter constitutes a "seizure" under the Fourth Amendment, and triggers Fourth Amendment protections, when, considering all the circumstances surrounding the encounter, "a reasonable person would have believed that he was not free to leave." *United States v. Black*, 707 F.3d 531, 537 (4th Cir. 2013) (quoting *United States v. Gray*, 883 F.2dg 320, 322 (4th Cir. 1989)). Factors to be considered when determining whether a reasonable person would believe he was free to leave an encounter with law enforcement include, but are not limited to: the number of officers present; whether the officers were in uniform; whether the officers displayed their weapons; whether the officers touched the defendant; whether the officers attempted to restrain the defendant's movement; whether the questioning was threatening; and whether the officers treated the defendant as if they suspected he committed illegal activity. *Jones*, 678 F.3d at 300.

Like unlawfully obtained tangible evidence, statements derived from an unlawful seizure are inadmissible under the Fourth Amendment. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Similarly, "if the police use illegally seized evidence to induce or trigger a confession, the confession is not admissible against one who has standing to complain of the illegal search." *McCloud v. Bounds*, 474 F.2d 968, 970 (4th Cir. 1973) (citations omitted).

The Fifth Amendment provides "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To help protect this constitutional right, the Supreme Court has ruled that law enforcement must advise a defendant of his Fifth Amendment rights—i.e., provide a defendant with *Miranda* warnings—prior to custodial questioning. *Miranda*

*v. Arizona*, 384 U.S. 436, 444 (1966). "A confession made during a custodial interrogation will be suppressed unless police advise the defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and the defendant knowingly, intelligently, and voluntarily waives those rights." *United States v. Holmes*, 670 F.3d 586, 591 (4th Cir. 2012) (citing *United States v. Guay*, 108 F.3d 545, 549 (4th Cir. 1997)).

"Coercive police activity is a necessary predicate" to a finding that a confession or a waiver of *Miranda* rights was not voluntary. *United States v. Cristobal*, 293 F.3d 134, 140-41 (4th Cir. 2002). "The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997). A confession is involuntary when, considering the totality of the circumstances, the defendant's will was "overborne," or his "capacity for self-determination [was] critically impaired." *Id.* (quoting *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987)).

## C.    Discussion and Analysis

As an initial matter, the Court notes it is uncontested Defendant's Statements 3, 4, and 7 should be suppressed. The Court will therefore grant the portion of Defendant's Motion to Suppress Statements pertaining to these Statements. The Court will consider the admissibility of Statements 1, 2, 5, and 6 in turn.

Defendant made Statements 1 and 2 when Officer Ham arrived at the Residence and asked several individuals standing in the yard, including Defendant, for identification. *See* ECF No. 47-2 at 7-9. There is no evidence Officer Ham told Defendant he was under arrest at this time, brandished any weapons, restrained Defendant in any way, or threatened Defendant. *See Jones*, 678 F.3d at 300 (factors to be considered when determining whether an encounter constitutes a

seizure under the Fourth Amendment). Officer Ham simply arrived at the Residence and asked individuals standing in the yard where Defendant and Ms. King were and, when he received no response, asked for identification from those present. *See* ECF No. 47-2 at 8-9. The Court has reviewed the relevant evidence, and the Court is of the opinion that a reasonable person in Defendant's situation at the time he made Statements 1 and 2 would have believed he was free to leave.[1] The Court therefore holds Defendant was not seized for purposes of the Fourth Amendment when he made Statements 1 and 2, and these statements do not trigger Fourth Amendment protections. *See Black*, 707 F.3d at 537.

Defendant also argues Statement 1 is inadmissible under the Fifth Amendment because a defendant's silence cannot be used against him. Defendant relies on *Doyle v. Ohio*, 426 U.S. 610 (1976), in support of this contention. *Doyle*, however, analyzes the use of a defendant's post-arrest silence, which is prohibited. *Id.* at 619. Unlike post-arrest silence, use of a defendant's pre-arrest silence does not violate the Fifth Amendment. *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980). As explained above, Defendant was not seized, and was thus not under arrest, at the time he made Statements 1 and 2. Therefore, admission of Defendant's pre-arrest silence constituting Statement 1 does not violate the Fifth Amendment. *See Jenkins*, 447 U.S. at 238.

Because Defendant was not seized for purposes of the Fourth Amendment when he made Statements 1 and 2, the Court will overrule the portion of Defendant's Motion to Suppress seeking to suppress Statements 1 and 2.

---

[1] The Court acknowledges Officer Ham has testified he would not have permitted Defendant to leave during this questioning, but Officer Ham's subjective impression of the scene is not controlling. Rather, the relevant inquiry is whether a reasonable person in Defendant's situation would have believed he was free to leave. *See United States v. Black*, 707 F.3d at 537.

The Court will now turn to the admissibility of Statements 5 and 6. It is undisputed Defendant was under arrest when he gave these statements. It is also undisputed Investigator Brown advised Defendant of his *Miranda* rights before Defendant gave Statement 5, and Investigator Jordan did so again before Defendant made Statement 6. Defendant provided Statements 5 and 6 after the cocaine was found in the Green Vehicle, *see* ECF No. 47-4 at 13, and after Mr. Day had informed law enforcement Defendant regularly drove the Green Vehicle, *see* ECF No. 47-2 at 3-4. The Court holds the officers on the scene had probable cause to arrest Defendant based on the fact that they had recovered cocaine in the Green Vehicle, which they knew Defendant had been regularly driving. Therefore, contrary to Defendant's assertion, Defendant's seizure at the time he made Statements 5 and 6 did not violate the Fourth Amendment.

The Court rejects Defendant's contention Statements 5 and 6 are inadmissible because law enforcement confronted Defendant with illegally recovered evidence to elicit the statements. Because, as explained above in connection with Defendant's Motion to Suppress Evidence, the evidence recovered during the searches of the Green Vehicle and the Residence did not violate Defendant's Fourth Amendment rights, law enforcement's use of such evidence while questioning Defendant fails to render Defendant's statements inadmissible. *See McCloud*, 474 F.2d at 970.

The Court also disagrees with Defendant's claim that Statements 5 and 6 are inadmissible under the Fifth Amendment because they were the product of police threats and coercion. Defendant argues Investigator Brown's statement that the police would call DSS to take control of Defendant's child until the situation was taken care of and Investigator Jordan's comment that Defendant and Ms. King would both be charged if nobody claimed the drugs and guns constituted threats and coercion for purposes of the Fifth Amendment. The Court has carefully reviewed the record and disagrees. These comments of Investigator Brown's and Investigator Jordan's were

simply truthful statements regarding Defendant's situation. *See Braxton*, 112 F.3d at 782 (4th Cir. 1997) ("Truthful statements about [a defendant's] predicament are not the type of "coercion" that threatens to render a statement involuntary." (quoting *United States v. Pelton*, 835 F.2d 1067, 1073 (4th Cir. 1987))).  There is no credible evidence Defendant's will was "overborne," or his "capacity for self-determination [was] critically impaired."  *See id.* at 780.  Therefore, the Court holds Statements 5 and 6 were voluntary and were not the product of threats or coercion by the police.

Because the Court holds Statements 5 and 6 were voluntarily made after Defendant was lawfully arrested and advised of his *Miranda* rights, the Court will deny the portion of Defendant's Motion to Suppress Statements seeking to suppress Statements 5 and 6.


## V.    CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court that Defendant's Motion to Dismiss is **DENIED**, Defendant's Motion to Suppress Evidence is **DENIED**, and Defendant's Motion to Suppress Statements is **GRANTED IN PART AND DENIED IN PART**.  The portion of Defendant's Motion to Suppress Statements seeking to suppress Defendant's Statements 3, 4, and 7 is **GRANTED**, and the portion seeking to suppress Defendant's Statements 1, 2, 5, and 6 and is **DENIED**.

Because the Court's holdings articulated above are dispositive of the pending motions, the Court declines to address the parties' remaining arguments. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

**IT IS SO ORDERED.**

Signed this 18th day of April 2018 in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE